## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

**United States of America**

**v.**

**James Bowman**

**Case No. 3:12-cr-00106 (1) (VLB)**

**May 31, 2022**

### <u>REPORT AND RECOMMENDATION</u>

The United States Probation Office ("Probation") alleges that the defendant, James Bowman, violated the conditions of his supervised release.  (Petition, ECF No. 631; Report, ECF No. 637.)  Senior District Judge Vanessa L. Bryant referred his case to me – Magistrate Judge Thomas O. Farrish – to conduct a violation hearing.  (ECF No. 630.)  I held a hearing on May 2, 2022, at which Mr. Bowman admitted the allegations.  (ECF No. 641.)  Pursuant to 18 U.S.C. § 3401(i),[1] I recommend that the court revoke Mr. Bowman's supervised release and sentence him to eight months of imprisonment, to be followed by a forty-eight-month term of supervised release with additional conditions as discussed more fully below.

### I.     BACKGROUND

On May 15, 2012, a grand jury returned a seven-count indictment charging Mr. Bowman and seven other individuals with violations of the Controlled

---

[1]     **18 U.S.C. § 3401(i) provides that a "district judge may designate a magistrate judge to conduct hearings to modify, revoke, or terminate supervised release, including evidentiary hearings, and to submit to the judge proposed findings of fact and recommendations for such modification, revocation, or termination by the judge, including, in the case of revocation, a recommended disposition under" 18 U.S.C. § 3583(e).**

Substances Act.  (Indictment, ECF No. 1.)  In Count One, the grand jury charged all eight defendants with conspiracy to distribute and to possess with intent to distribute narcotics, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), and 846. (*Id.*)  In Counts Three through Seven, it charged Mr. Bowman with five separate instances of possession with intent to distribute and distribution of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  (*Id.*)

On December 2, 2014, Mr. Bowman pled guilty to the conspiracy charge before Magistrate Judge Thomas P. Smith.  (ECF No. 413.)  At his change of plea hearing, he signed a Stipulation of Offense Conduct in which he admitted to conspiring with the seven other defendants "to distribute and to possess with intent to distribute cocaine base, cocaine, and heroin."  (Plea Agreement, ECF No. 416, at 10.)  He also acknowledged that "the quantity of cocaine base involved in [his] offense conduct was at least 280 grams, but less than 840 grams."  (*Id.*)  After several continuances, the court scheduled his sentencing hearing for October 2, 2015.  (ECF No. 489.)

At his sentencing, Mr. Bowman described himself as "a man seeking change."  (Hrg. Tr., ECF No. 510, at 13:4-5.)  He admitted that he was a drug user as well as a drug seller, and he attributed his criminal drug sales to his own habit, at least in part.  (*Id.* at 16:12-14) ("I have drug abuse.  Not only was I selling drugs, I was also doing drugs and my mind was really not there.").  He explained that he had once tried a drug treatment program, but he "didn't take it serious" and "relapsed time and time again."  (*Id.* at 16:17-19.)  He closed his remarks by telling

the court that he was "really going to seek to change" and "want[ed] to do better." (*Id.* at 17:19-20.)

The court sentenced Mr. Bowman to 120 months of imprisonment. (Judgment, ECF No. 496, at 1.)  This was the mandatory minimum term for a violation of 21 U.S.C. § 841(b)(1)(A), and it represented a downward departure from the term suggested by the Sentencing Guidelines.  Mr. Bowman's total offense level was 29, and his criminal history category was VI.  (Plea Agreement, ECF No. 416, at 4.)  As he acknowledged in the plea agreement letter, the Guidelines range for a defendant with that offense level and criminal history was "151 to 188 months of imprisonment."  (*Id.*)

The court also sentenced Mr. Bowman to a five-year term of supervised release, to begin after his release from incarceration.  (Judgment, ECF No. 496.)  In light of his comments about the role of his own drug habit in his criminal activity, the court imposed three drug-related special conditions of supervised release, in addition to the mandatory and standard conditions.  (*Id.* at 1-2.)  First, it ordered that he "participate in a program recommended by the Probation Office for outpatient substance abuse treatment and testing."  (*Id.* at 1.)  Second, it ordered that "[u]pon the recommendation of Probation, the Court may order the defendant to participate in inpatient substance abuse treatment and testing."  (*Id.* at 2.)  Third, it required him to submit to "drug test[ing] at random within fifteen (15) days of his release from custody and, at the discretion of the Probation Office, at least twice per year thereafter."  (*Id.*)

Nearly five years after his sentencing, Mr. Bowman moved for compassionate release to home confinement.  (ECF No. 604.)  A month later, he filed a motion to reduce his sentence to time served under the First Step Act.  (ECF No. 608.)  The government was initially "inclined to support" the two motions, but reconsidered after reviewing his prison disciplinary history.  (ECF No. 618.)  The government noted that Mr. Bowman had possessed narcotics and alcohol in prison on separate occasions in 2018 and 2020, and that he had been expelled from the Bureau of Prisons' Residential Drug Abuse Treatment Program.  (*Id.* at 2.)

The court denied the two motions, in part for the reasons cited by the government.  (Ruling and Order, ECF No. 622.)  It noted that Mr. Bowman had "been disciplined on ten different occasions by the BOP," including "for conduct involving the possession and use of drugs" in a correctional facility.  (*Id.* at 10.)  It also observed that he "has a demonstrated propensity to reoffend," a "significant criminal history," and "poor susceptibility to supervision both within a penal institution and in the community."  (*Id.*)  The court added that Mr. Bowman "has also violated probation virtually every single time he was on it."  (*Id.*)

Mr. Bowman began his term of supervised release on April 30, 2021.  (*See* ECF No. 637, at 4.)  According to Probation, he tested positive for marijuana and buprenorphine just three days later, on May 3, 2021.  (ECF No. 631, at 2.)  He then tested positive for norbuprenorphine on June 25, 2021, and he returned a second positive test for marijuana on September 17, 2021.  (*Id.*)  On September 30, 2021 he was unsuccessfully discharged from his substance abuse treatment program for lack of attendance.  (*Id.*)

4

During the fall of 2021, Probation began to lose contact with him. His Probation Officer visited him at his home on October 8, 2021, and "addressed [his] unsuccessful discharge from substance abuse treatment," adding that "if his non-compliance continued . . . it may result in Court intervention." (*Id.* at 1.) The officer instructed him to call with an update on October 12, 2021, but he did not do so. (*See id.*) The officer then attempted home visits on three occasions in October and November, "to no avail." (*Id.*) Phone calls and text messages went unreturned. (*Id.* at 1-2.) By the end of November, Mr. Bowman had been out of touch for more than a month and a half. (*See id.*)

On November 29, 2021, Probation filed a Petition for Warrant or Summons for Offender Under Supervision. (*Id.*) In Charge 1, the petition alleged that Mr. Bowman violated Standard Condition No. 2 – that is, the condition that he report to Probation as directed – when he failed to return phone calls and text messages, and when he failed to make himself available for home visits. (*Id.* at 1-2.) In Charge 2 the petition alleged that, in failing to complete substance abuse treatment "due to lack of attendance," Mr. Bowman violated the special condition requiring him to submit to drug treatment. (*Id.* at 2.) And in Charge 3 the petition alleged that he violated Mandatory Condition No. 3 – the condition that he refrain from using controlled substances – when he used marijuana, buprenorphine and norbuprenorphine in May, June and September of 2021. (*Id.*) The court reviewed the petition on December 1, 2021, and ordered that a warrant be issued for his arrest. (*Id.* at 3.)

5

While the federal warrant was pending, New Haven police arrested Mr. Bowman on new state charges on February 12, 2022.  As detailed in Probation's subsequent report, an individual named Daquan Young called police that evening, alleging that Mr. Bowman was "threatening him about some money [he] owed him." (Rpt. on Violation of Supervised Release, ECF No. 637, at 3.)  Mr. Young added that Mr. Bowman had come to his home in "a black Mercedes SUV," and had "[taken] out a black handgun and point[ed] it at him." (*Id.*)  Officers arrested Mr. Bowman but were unable to find any gun or confirm that he had used one. (*Id.*)  They did, however, find controlled substances when searching him upon his arrival at a detention center. (*Id.*)  Specifically, the search "revealed a large sandwich bag containing 14 small clear Ziploc bags that contained a white rock like substance, which tested positive for the presence of crack/cocaine." (*Id.*)  It also revealed "2 white pills, later confirmed to be Diazepam, a controlled substance." (*Id.*)  The officers accordingly charged Mr. Bowman with threatening in the first degree, breach of peace in the second degree, possession of a controlled substance, possession of a narcotic substance with intent to sell, and unauthorized conveyance of items into a correctional facility. (*Id.*)

On April 4, 2022, Mr. Bowman pled guilty to misdemeanor threatening in the second degree and misdemeanor possession of a controlled substance. (*Id.*)  The Superior Court gave him an eleven-month suspended sentence. (*Id.*)  Upon his release from state custody, he was arrested on the outstanding federal warrant (ECF No. 635), and he appeared before United States Magistrate Judge Robert M. Spector on April 5, 2022.  (ECF No. 632.)  Through counsel, he consented to

6

detention at his initial appearance, "reserv[ing] his right to present a potential bond package and request release at a future date."  (*Id.*)  He added that he would "likely be seeking a potential placement in a long-term, inpatient drug treatment program." (*Id.*)  The next day, Judge Bryant referred the case to me to hold a violation hearing. (ECF No. 630.)

After receiving and reviewing a brief from Mr. Bowman's counsel (ECF No. 639), I held the hearing by videoconference on May 2, 2022.  (ECF No. 641.)  I began by confirming the parties' consent to proceed by videoconference.  Mr. Bowman consented, and moreover he acknowledged that he had consulted with his attorney on the issue, as required under the CARES Act.  *See* Coronavirus Aid, Relief, and Economic Security Act, Pub. L. 116-136, § 15002(b)(4).  I then ensured that he was aware of the violation allegations, and he confirmed that he had received a copy of Probation's report and had discussed it with his counsel.  I also ensured that he was aware of the maximum penalties that could be imposed.

I then went through each of the five violation allegations, and asked Mr. Bowman whether he admitted or denied them.  He admitted every one of the five. He apologized for his conduct, explaining that after he was released from prison, he "went back to what [he] knew best, getting high."  He added that he was an addict, and that he needed help overcoming his addiction.

The discussion then turned to sentencing.  Through counsel, Mr. Bowman acknowledged that the Sentencing Guidelines suggested a term of imprisonment of eight to fourteen months.  He nonetheless argued that he should be sentenced to time served, and then released to an inpatient substance abuse treatment

program at the APT Foundation in New Haven.  He explained that he had one "Sword of Damocles" hanging over him in the form of the eleven-month suspended sentence, and that a second "Sword of Damocles" – an additional term of supervised release with a condition that he successfully complete treatment at the APT Foundation – would be sufficient to ensure that he did not breach the court's trust again.

The government argued for a term of imprisonment at the lower end of the Guidelines range.  It acknowledged Mr. Bowman's ongoing struggles with substance abuse, but it asserted that revocation was mandatory under 18 U.S.C. § 3583(g) in light of his positive drug tests and possession of controlled substances. It also pointed out that the Probation reports described a worsening behavioral trajectory, beginning with marijuana use in May 2021 and escalating into a potentially violent episode of criminal conduct in February 2022.   In the government's view, sentencing Mr. Bowman to time served and releasing him to an inpatient substance abuse program would not reflect a proper balance of the 18 U.S.C. § 3583 sentencing factors.

I will return to the parties' arguments in Section III below.  First, I will set forth my proposed findings of fact.

II.    FINDINGS OF FACT

Based upon Probation's submissions and upon Mr. Bowman's admissions at the hearing, I would find as follows:

8

A. **Charge No. 1: Violation of Standard Condition No. 2**

1.      It was a condition of Mr. Bowman's supervised release that he "report to the probation officer in a manner and frequency directed by the court or probation officer." (Judgment, ECF No. 496, at 4.)

2.      Mr. Bowman's Probation Officer directed him to report via phone call and text message on several occasions during October and November, 2021.

3.      On these occasions, Mr. Bowman did not report as directed.

B. **Charge No. 2: Violation of Special Condition No. 1**

1.      It was a condition of Mr. Bowman's supervised release that he "participate in a program recommended by the Probation Office for outpatient substance abuse treatment and testing." (Judgment, ECF No. 496, at 1.)

2.      The Probation Office recommended that Mr. Bowman undergo substance abuse treatment.

3.      Mr. Bowman failed to attend a scheduled substance abuse treatment session on July 22, 2021.

4.      Mr. Bowman failed to attend scheduled substance abuse treatment sessions in August 2021, including a session on August 13, 2021.

5.      Mr. Bowman unsuccessfully discharged from substance abuse treatment due to lack of attendance.

C. **Charge No. 3:  Violation of Mandatory Condition No. 3**

1.      It was a condition of Mr. Bowman's supervised release that he "refrain from any unlawful use of a controlled substance."  (Judgment, ECF No. 496, at 4.)

9

2.      Mr. Bowman used marijuana on or about May 3, 2021, as reflected in a positive test result returned on that date.

3.      Mr. Bowman used buprenorphine on or about May 3, 2021, as reflected in a positive test result returned on that date.

4.      Mr. Bowman used norbuprenorphine on or about June 25, 2021, as reflected in a positive test result returned on that date.

5.      Mr. Bowman used marijuana on or about September 17, 2021, as reflected in a positive test result returned on that date.

D. Charge No. 4: Violation of Mandatory Condition No. 1

1.      It was a condition of Mr. Bowman's supervised release that he "not commit another federal, state or local offense."  (Judgment, ECF No. 496, at 4.)

2.      Mr. Bowman committed the offense of threatening in the second degree on February 12, 2022.

3.      Mr. Bowman committed the offense of possession of controlled substances on February 12, 2022.

E. Charge No. 5: Violation of Mandatory Condition No. 2

1.      It was a condition of Mr. Bowman's supervised release that he "not unlawfully possess a controlled substance."  (Judgment, ECF No. 496, at 4.)

2.      Mr. Bowman unlawfully possessed a controlled substance on February 12, 2022.

### III.   LEGAL PRINCIPLES AND ANALYSIS

#### A.  Whether Mr. Bowman's Supervised Release Should Be Revoked

Under 18 U.S.C. § 3583(g), revocation is mandatory if the defendant commits certain drug offenses while on supervised release.  "If the defendant . . . possesses a controlled substance in violation of the condition set forth in [18 U.S.C. § 3583(d)];" "refuses to comply with drug testing imposed as a condition of supervised release; or . . . as part of drug testing, tests positive for illegal controlled substances more than three times over the course of 1 year . . . the court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment not to exceed the maximum term of imprisonment authorized under subsection (e)(3)."  18 U.S.C. § 3583(g).  "Following the plain meaning of the statute, especially its use of the mandatory term 'shall,'" district courts are "obligated," upon an admission of controlled substance use or possession, "to terminate [the defendant's] supervised release and impose a term of imprisonment."  *U.S. v. Wirth*, 250 F.3d 165, 169 (2d Cir. 2001).

18 U.S.C. § 3583(d) carves out a limited exception to this rule.  This section instructs that, when a defendant fails a drug test, "[t]he court shall consider whether the availability of appropriate substance abuse treatment programs, or an individual's current or past participation in such programs, warrants an exception in accordance with United States Sentencing Commission guidelines from the rule of section 3583(g)."  18 U.S.C. § 3853(d); *see also Wirth*, 250 F.3d at 170 ("[Section] 3583 was amended in 1994 to allow district courts to carve out an exception to § 3583(g) in cases where a substance abuse treatment program is available and

appropriate.").  Courts have not fully addressed whether this exception may be invoked where, as here, "the established violations of a defendant's conditions of supervised release included more than failing a drug test."  *U.S. v. Brooker*, 858 F.3d 983, 986 (5th Cir. 2017) ("Because Brooker's term of supervised release was revoked both due to drug possession and his refusal to comply with drug testing – not just because he failed a drug test – it is unclear whether Brooker qualifies for the treatment exception under our existing case law.").  Even when the exception is available, however, it is typically invoked only in favor of those defendants who make "a genuine, good-faith effort to treat" their addiction.  *U.S. v. Russell*, No. 05-cr-272 (CKK/GMH), 2022 WL 1473685, at \*4 (D.D.C. Apr. 25, 2022); *accord U.S. v. Rivera*, No. 3:21-cr-59-K, 2022 WL 1478564, at \*6 (N.D. Tex. Apr. 21, 2022) ("[T]he Court should not, in its discretion, apply this exception where Defendant has been provided the available treatment resources to assist him in abstaining from illegal drug use and address his chemical dependency but has continued to engage in the use of illegal drugs despite the resources provided to him."); *U.S. v. Baker*, No. CR 16-53, 2019 WL 7753758, at \*6 n.5 (D.R.I. Aug. 6, 2019) ("Defendant's failure to consistently attend and take advantage of proffered substance abuse treatment is a reason" not to apply the Section 3583(d) exception); *U.S. v. Metcalf*, 292 F. App'x 447, 450 (6th Cir. 2008) (affirming order of revocation where the "defendant had failed to attend required weekly group drug treatment sessions" and where "substance abuse treatment had not worked in the past.").

Applying these principles, I recommend that the court regard revocation as mandatory in Mr. Bowman's case.  The record does not disclose "genuine, good-

faith" treatment efforts sufficient to invoke the Section 3583(d) exception.  To the contrary, Mr. Bowman has consistently failed to take full advantage of the many treatment opportunities that have been provided to him.  At his sentencing, for example, he admitted that he "didn't take . . . serious[ly]" the treatment programs he had been offered up to that point.  (Hrg. Tr., ECF No. 510, at 16:17-19.)  While incarcerated, he got himself expelled from the Bureau of Prisons' Residential Drug Abuse Treatment Program.  And while on supervised release, he skipped many of his treatment sessions, and was discharged from his program for lack of attendance.  Here, as in *Baker*, the "Defendant's failure to consistently attend and take advantage of proffered substance abuse treatment[is a reason" not to apply the Section 3583(d) exception.  And with that exception unavailable, revocation is mandatory.  18 U.S.C. § 3583(g); *Wirth*, 250 F.3d at 169.

      **B.  What Sentence Should Be Imposed**

      Under 18 U.S.C. § 3583(e)(3), a defendant's maximum term of imprisonment for a supervised release violation hinges on the gravity of the underlying offense of conviction.  The statute provides that "a defendant whose term [of supervised release] is revoked may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case."  18 U.S.C. § 3583(e)(3).  In this case, the Defendant pled guilty to a violation of 21 U.S.C. § 841(b)(1)(A), a Class A felony.  *See* 18 U.S.C. §3559 (stating that offenses punishable by life imprisonment are Class A felonies);

21 U.S.C. § 841(b)(1)(A) (stating that violators "shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life"); *U.S. v. McNaught*, 396 Fed. App'x 772, 773 (2d Cir. 2010) (summary order) ("Class A felonies . . . by definition, include[] a violation of 21 U.S.C. § 841(b)(1)(A)."). Thus, the maximum available term of imprisonment in this instance is five years.  18 U.S.C. § 3583(e)(3).

A sentence for a violation of supervised release may include an additional term of supervised release as well.  "If supervised release is revoked, then the district court may, as part of its new sentence, impose an additional term of supervised release to follow imprisonment."  *U.S. v. Turner*, 837 F. App'x 833, 835 (2d Cir. 2020) (summary order) (citing 18 U.S.C. § 3583(h) and U.S.S.G. § 7B1.3(g)(2)).  "The length of such term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release."  *Id.* (quoting 18 U.S.C. § 3583(h)).

In determining an appropriate sentence for a supervised release violation, district courts must consider those 18 U.S.C. § 3553 sentencing factors that are incorporated into 18 U.S.C. § 3583(e).  *See* 18 U.S.C. § 3583(e); *U.S. v. Dowdell*,  No. 20-4094, 2021 WL 5170728, at *2 (2d Cir. Nov. 8, 2021) (summary order) ("Under 18 U.S.C. § 3583(e), a district court must consider a subset of the sentencing factors set forth in 18 U.S.C. § 3553(a) when revoking supervised release.").  There are eight such factors:  (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" 18 U.S.C. § 3553(a)(1); (2) "the need for the

sentence imposed . . . to afford adequate deterrence to criminal conduct;" 18 U.S.C. § 3553(a)(2)(B); (3) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant;" 18 U.S.C. § 3553(a)(2)(C); (4) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" 18 U.S.C. § 3553(a)(2)(D); (5) "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the" Sentencing Guidelines; 18 U.S.C. § 3553(a)(4); (6) "any pertinent policy statement" issued by the Sentencing Commission; 18 U.S.C. § 3553(a5); (7) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;" 18 U.S.C. § 3553(a6); and (8) "the need to provide restitution to any victims of the offense."  18 U.S.C. § 3553(a)(7).  At the same time, district courts are not prohibited from considering those Section 3553(a) factors that are not specifically incorporated into Section 3583.  *U.S. v. Williams*, 841 Fed. Appx. 289, 292 (2d Cir. 2021) (summary order).

In weighing the statutory factors and formulating a sentence, courts focus more on the breach of trust implicit in the supervised release violation than on the violation conduct itself.  "A defendant's ability to follow [supervised release] conditions reflects the trust placed in him by the sentencing court – essentially, the defendant promises he is 'able to return to society and function as a responsible, self-reliant person.'"  *U.S. v. Peguero*, No. 20-3798, 2022 WL 1510371, at *12 (2d Cir. May 13, 2022) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).  "Thus . . . any sanctions resulting from violations of supervised release conditions,

15

even if based on new criminal conduct, 'are first and foremost considered sanctions for the defendant's breach of trust.'"  *Id.* (quoting *U.S. v. Haymond*, \_\_ U.S. \_\_, 139 S. Ct. 2369, 2386 (2019) (Breyer, J., concurring)).   The Sentencing Commission's Policy Statements reflect these principles.  "While the nature of the conduct leading to the revocation would be considered in measuring the extent of the breach of trust, imposition of an appropriate punishment for any new criminal conduct would not be the primary goal of a revocation sentence."  U.S.S.G. Ch. 7, Pt. A, § 3(b).  "Instead, the sentence imposed upon revocation would be intended to sanction the violator for failing to abide by the conditions of the court-ordered supervision, leaving the punishment for any new criminal conduct to the court responsible for imposing the sentence for that offense."  *Id.*  One implication of this focus on the defendant's breach of trust is that the court may impose a longer sentence when "the original sentence was the result of a downward departure" from the applicable Guidelines range.  U.S.S.G. §7B1.4 cmt. 4; *see also Dowdell*, 2021 WL 5170728, at *2.

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation based on the defendant's criminal history and the "grade" of the violation.  "Chapter 7 provides an alphabetical classification system with different recommended sentencing ranges based on the severity of the violation of supervised release."  *U.S. v. Ramos*, 979 F.3d 994, 99 (2d Cir. 2020) (citing *U.S. v. Kingdom (U.S.A.), Inc.*, 157 F.3d 133, 136 (2d Cir. 1998)). "In descending order of severity, that system classifies violations as either Grade A, B, or C.  The higher the grade, the longer the suggested sentence."  *Id.*

In this case, Mr. Bowman's violations are Grade C violations.  (*See, e.g.,* Rpt. on Violation of Supervised Release, ECF No. 637, at 4.)  Grade C encompasses "conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision."  U.S.S.G. § 7B1.1.  Threatening in the second degree is a Class A misdemeanor under Connecticut law, punishable by a prison term of up to one year.  Conn. Gen. Stat. §§ 53a-62, 53a-36.  And the specific drug possession offense to which Mr. Bowman pled guilty – Conn. Gen. Stat. § 21a-279a – is not punishable by a prison term.

When a defendant with a criminal history category of VI commits a Grade C violation, the Policy Statements in Section 7B1.4 suggest a prison term of eight to fourteen months.  U.S.S.G. § 7B1.4.  Mr. Bowman acknowledges this.  (*See* Def.'s Supervised Release Hrg. Memo., ECF No. 639, at 1) ("Mr. Bowman is prepared to admit to the charged violations, all of which allege Grade C violations, leading to a Guidelines range of 8 – 14 months.").  He nevertheless argues for a sentence of time served, to be followed by immediate admission to inpatient substance abuse treatment at the APT Foundation.  (*Id.*)

Considering the relevant Section 3553(a) factors, I cannot endorse Mr. Bowman's request for a sentence of time served.  The nature and circumstances of the violation conduct indicate a profound breach of the court's trust; Mr. Bowman received a downward departure of 31 to 68 months, yet he chose to repay the court's faith in him by engaging in new criminal conduct that easily could have sparked violence.  The history and characteristics of the defendant likewise

17

counsel in favor of a longer sentence than time served; Mr. Bowman has a long criminal history that stretches back to 1995, when he was just sixteen years old, and it includes multiple narcotics offenses and an assault on a police officer.  A longer sentence is also necessary to "afford adequate deterrence to criminal conduct" and to "protect the public from further crimes of the defendant," 18 U.S.C. §§ 3553(a)(2)(B), -(C), because the mere possibility of revocation and incarceration evidently was insufficient to deter Mr. Bowman from criminal activity.  Moreover, a sentence of time served would be inconsistent with the Policy Statements, *see* 18 U.S.C. § 3553(a)(5) (directing courts to consider "any pertinent policy statement" issued by the Sentencing Commission), and may constitute an "unwarranted sentence disparit[y] among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  Mr. Bowman has not cited any precedent for such a lenient sentence for a defendant with his criminal history and type of violation conduct, and indeed the precedents generally appear to be within or above the Guidelines range.  *See, e.g., U.S. v. Tuescher*, No. 11-CR-141-WMC-01, 2012 WL 2087823, at *2 (W.D. Wisc. June 8, 2012) (sentencing Grade C violator with criminal history category of VI to nine months of incarceration); *U.S. v. Thomas*, No. A-03-CR-270-LY, 2008 WL 11435707, at *2 (W.D. Tex. Aug. 7, 2008) (twenty-four months); *U.S. v. Colbert*, No. 00-cr-03-KRG-KAP, 2007 WL 9747580, at *2 (W.D. Pa. Feb. 6, 2007) (eighteen months).

At the same time, Section 3583 also directs the court to consider the defendant's need for treatment.  18 U.S.C. §§ 3583(e), 3553(a)(2)(D).  Here, it seems clear that Mr. Bowman's own substance abuse issues continue to drive his criminal

behavior, at least in part.  To be sure, he has not made enough of a good faith effort at treatment to invoke the 18 U.S.C. § 3583(d) exception and avoid revocation entirely.  (*See* discussion, Section III.A *supra*.)  But so far as the record discloses, he has had only one attempt at residential drug treatment; other than the BOP RDAP program from which he was expelled, all of his treatment programs have been in an outpatient setting.  Considering the need "to provide the defendant with . . . medical care, or other correctional treatment in the most effective manner," as Sections 3583(e) and 3553(a)(2)(D) require, I agree with Mr. Bowman's counsel that residential drug treatment should be a component of the sentence.

I conclude that the best way to harmonize these competing considerations would be to sentence Mr. Bowman to a term of imprisonment at the low end of the Guidelines range – but no lower than that – to be followed by a longer term of supervised release on conditions that require him to enter and successfully complete a residential substance abuse treatment program.   The term of supervised release should be long enough not only to ensure that he successfully completes the program, but also to maximize his chances of remaining sober after discharge.   And since Mr. Bowman has consistently engaged in maladaptive behavior ever since he was released from prison, I recommend that his mental health treatment condition (Special Condition No. 1) be amended specifically to authorize Probation to direct him to undergo cognitive behavioral therapy.  Finally, to protect against another rapid return to substance use and criminal behavior, I recommend that upon his release from incarceration, Mr. Bowman be placed on home detention with GPS location monitoring for a period of two months.

IV.     **CONCLUSION**

In summary, I recommend that Mr. Bowman be sentenced to an eight-month term of imprisonment, to be followed by a forty-eight-month term of supervised release.  With respect to the supervised release term, I recommend that the court impose the following special conditions, in addition to the existing conditions:

1.     Mr. Bowman shall enter and successfully complete a residential substance abuse treatment program of at least four months' duration, to be approved by the United States Probation Office;

2.     Following completion of the residential treatment program, Mr. Bowman shall be placed on home detention with GPS location monitoring for a period of two months; he shall remain in his home at all times except for employment, religious obligations, medical visits, substance abuse treatment, or other activities approved in advance by the United States Probation Office;

3.     Mr. Bowman shall attend and participate in a cognitive behavioral therapy program if and as directed by the United States Probation Office, and shall follow all rules and regulations of the program; in addition, he must pay all or a portion of the costs of the program, based on his ability to pay; and

4.     Mr. Bowman shall participate in substance abuse treatment and testing as directed by the United States Probation Office, and shall pay all or a portion of the costs associated with treatment, based on his ability to pay.

Any objection to this report and recommendation must be specific and must be filed with the Clerk of the Court within fourteen days.  Fed. R. Crim. P. 59(b)(2).  "Failure to object in accordance with this rule waives a party's right to review."  *Id.;*

*see also U.S. v. Foley*, No. 18-cv-333 (VLB), 2021 WL 1783118, at *1 (D. Conn. May

5, 2021).

*/s/ Thomas O. Farrish*

Hon. Thomas O. Farrish
United States Magistrate Judge